# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**REGINALD D. TALL and MICHELLE TALL,**

        **Plaintiffs,**

**v.**                             **Case No:   6:20-cv-1125-Orl-37LRH**

**FEDERAL INSURANCE COMPANY,**

        **Defendant.**

_____

**REGINALD D. TALL and MICHELLE TALL,**

        **Plaintiffs,**

**v.**                             **Case No:   6:20-cv-1127-Orl-37LRH**

**FEDERAL INSURANCE COMPANY,**

        **Defendant.**

_____

**REGINALD D. TALL and MICHELLE TALL,**

        **Plaintiffs,**

**v.**                             **Case No:   6:20-cv-1128-Orl-37LRH**

**FEDERAL INSURANCE COMPANY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

## I.     INTRODUCTION.

The above-styled cases are three related matters pending before this Court between Plaintiffs Reginald and Michelle Tall and Defendant Federal Insurance Company:   Nos. 6:20-cv-1125-Orl-37LRH (the "1125 Case"); 6:20-cv-1127-Orl-37LRH (the "1127 Case"); and 6:20-cv-1128-Orl-37LRH (the "1128 Case").   In each of these cases, Plaintiffs filed a separate complaint against Defendant in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida on July 2, 2019.  *See* Doc. 1-1 (in each case).   According to the complaints in each case, these three lawsuits concern disputes between Plaintiffs and Defendant over three separate claims made under a homeowner's insurance policy:

- Case No. 2019-CA-008226-O; which relates to claim number 047516040152, under policy number 13692298-01, for September 8, 2016 alleged windstorm and water loss, currently pending before this Court in the 1125 Case (Doc. 1-1 ¶¶ 5, 9, 11).

- Case No. 2019-CA-008228-O; which relates to claim number 047518019825, under policy number 13692298-01, for August 25, 2016 alleged water loss, currently pending before this Court in the 1127 Case (Doc. 1-1 ¶¶ 5, 9, 11).

- Case No. 2019-CA-008229-O; which relates to claim number 047518016566, under policy number 13692298-01, for May 12, 2018 alleged water loss, currently pending before this Court in the 1128 Case (Doc. 1-1 ¶¶ 5, 9, 11).

On June 24, 2020, Defendant removed each of these cases to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446(b).  *See* Doc. 1 (in each case).   All of the notices of removal are identical. *See id.*  In the notices of removal, Defendant alleges that the parties are completely diverse in citizenship.  *See id.* at 3.  Defendant further alleges that the amount in controversy exceeds the jurisdictional threshold because, although the complaints only allege damages in excess of $15,000,

on June 8, 2020, Plaintiffs provided identical answers to Interrogatories in each case pointing to estimates of the claimed losses totaling $433,643.19. *See id.* at 4–5. Defendant has included the following attachments with each notice of removal:

- The state court complaint (Doc. 1-1 in each case).

- Plaintiffs' June 8, 2020 answers to Defendant's Interrogatories in each of the underlying cases (Docs. 1-2, 1-3, and 1-4 in each case)

- An estimate, prepared by public adjuster Ray Rosetti and dated 12/04/2018, listing the date of loss as 9/08/2016; type of loss as wind damage; and listing total estimated cost of repair as $142,305.65 (Doc. 1-5 in each case)

- An estimate, prepared by public adjuster Ray Rosetti and dated 7/18/2019, listing the date of loss as 5/12/2018; type of loss as wind damage; and listing total estimated cost of repair as $265,613.25 (Doc. 1-6 in each case)

- An estimate, prepared by Brian Waller from Waller Construction, Inc. and dated 9/30/2018, for an unspecified date of loss, for a total cost of repair of $25,724.49 (Doc. 1-7 in each case)

- An email from Plaintiffs' counsel stating that he suspects that "it covers more than one claim." (Doc. 1-8 in each case)

- Defendant's answer to the complaint (Doc. 1-9 in each case)

On July 5, 2020, Plaintiffs filed identical motions in each of these cases, seeking to remand the matters to state court for lack of diversity jurisdiction. *See* 1125 Case (Doc. 15); 1127 Case (Doc. 11); 1128 Case (Doc. 6).[1] Specifically, Plaintiffs claim that the notices of removal were

---

[1] Plaintiffs' motions to remand repeatedly reference to Defendant Federal Insurance Company as "Chubb." Defendant Federal Insurance Company points out that "Chubb" is not a Defendant in these proceedings, but it has nevertheless responded to the motions to remand as if Plaintiffs had referred to it as

untimely; that Defendant has failed to establish that the amount in controversy exceeds the jurisdictional threshold; and that Defendant waived its right to removal. *See id.* Plaintiffs have included the same exhibits in each motion: (1) an affidavit from counsel for Plaintiffs; (2) an email from Defendant's claims adjuster; and (3) two "Statement of Loss Summary" sheets. *See* Attachments 1 through 4 to each motion to remand.

Defendant has filed a response in opposition to the motions to remand in each case. *See* 1125 Case (Doc. 24); 1127 Case (Doc. 20); 1128 Case (Doc. 20). With the responses, Defendant has included: (1) copies of Defendant's Requests for Admissions (attachments 1 through 3 in each case); (2) copies of Plaintiffs' Responses to the Requests for Admissions (attachments 4 through 6 in each case); (3) copies of the three estimates at issue (attachments 7 through 9 in each case); (4) emails between counsel for Defendant and counsel for Plaintiffs (attachments 10 through 13 and 20 in each case); (5) copies of Defendant's Interrogatories served in each state court case (attachments 14 through 16 in each case); and (6) copies of Plaintiffs' Answers to the Interrogatories in each state court cases (attachments 17 through 19 in each case).

The motions to remand were referred to the undersigned for issuance of Reports and Recommendations, and the matters are ripe for review. For purposes of brevity and because each of these cases raise identical issues, each of the motions to remand are addressed in this single Report, which has been filed in all of the above-styled cases. For the reasons discussed herein, the undersigned recommends that each of the motions to remand be denied.

---

the proper Defendant throughout the motions. *See* 1125 Case (Doc. 24 n.1); 1127 Case (Doc. 20 n.1); 1128 Case (Doc. 20 n.1). Therefore, the undersigned has likewise treated Plaintiffs' reference to "Chubb" as a reference to Defendant Federal Insurance Company.

## II.    APPLICABLE LAW.

Pursuant to 28 U.S.C. § 1441(a), "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."  A party seeking to invoke a federal court's jurisdiction over a case must first show that the underlying claim is based upon either diversity jurisdiction or the existence of a federal question.  *See* 28 U.S.C. §§ 1331, 1332.  Diversity jurisdiction exists where the litigation is between citizens of different states, and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).  Removal statutes are strictly construed, and doubts should be resolved in favor of remand.  *Univ. of S. Ala. v. Am. Tobacco Co*., 168 F.3d 405, 411 (11th Cir. 1999) (citations omitted).

When the plaintiff does not plead a specific amount of damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.  *Williams v. Best Buy Co*., 269 F.3d 1316, 1319 (11th Cir. 2001) (citations omitted).   However, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it."  *Pretka v. Kolter City Plaza II, Inc*., 608 F.3d 744, 754 (11th Cir. 2010).   Instead, a removing defendant may obtain removal of a case to federal court by relying on "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations."  *Id.*

Pursuant to 28 U.S.C. § 1446, a removing defendant must generally file a notice of removal of a civil action within 30 days after receipt of the initial pleading.  28 U.S.C. § 1446(b)(1). However, "if the case stated by the initial pleading is not removable, a notice of removal may be

filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). "Other paper" includes "information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery." *Id.* § 1446(c)(3)(A); *see also Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213 n.62 (11th Cir. 2007) (interrogatory responses constitute "other paper"). In such cases, "removal requires that the defendant has received—not generated or compiled—a document containing an 'unambiguous statement that clearly establishes federal jurisdiction.'" *Pretka*, 608 F.3d at 763 (quoting *Lowery*, 483 F.3d at 1213).

## III.   ANALYSIS.[2]

Plaintiffs seek remand of each of the above-styled cases for three reasons:  (1) removal was untimely; (2) the amount in controversy did not exceed $75,000.00 at the time of removal and Defendant is impermissibly aggregating the claims from the three separate lawsuits and failed to account for pre-suit payments and deductibles; and (3) Defendant waived its right to removal. *See* 1125 Case (Doc. 15); 1127 Case (Doc. 11); 1128 Case (Doc. 6). Plaintiffs also seek an award of attorney's fees and costs for improper removal. *See id.* at 11 (citing 28 U.S.C. § 1447(c)). Plaintiffs' contentions will be addressed in turn.

---

[2] In each of the notices of removal, Defendant asserts that Plaintiffs are citizens and residents of Orange County, Florida. *See* Doc. 1 ¶ 5 (in each case). Defendant further asserts that it is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business located in New Jersey. *See* Doc. 1 ¶ 6 (in each case). Plaintiffs do not contest those assertions here or otherwise argue that the parties are not citizens of different states. Accordingly, the requirements of 28 U.S.C. § 1332(a)(1) are not further address herein.

A.    <u>Timeliness of Removal</u>.

Plaintiffs argue that on May 8 and 13, 2020, they served on Defendant estimates of their claims, which were attached to the notices of removal.    *See* 1125 Case (Doc. 15, at 5–6); 1127 Case (Doc. 11, at 5–6); 1128 Case (Doc. 6, at 5–6).[3]   Therefore, according to Plaintiffs, the notices of removal were untimely because they were filed on June 24, 2020, more than 30 days after receipt of the estimates.   *See id.* at 7.

Based on a review of the record and the documentation that each side submits in support, I find Plaintiffs' argument unpersuasive.   The parties' filings demonstrate that although Plaintiffs submitted the estimates to Defendant on May 8 and 13, 2020 – after repeated requests from counsel for Defendant, and after ambiguous email responses from counsel for Plaintiffs – Plaintiffs failed to inform Defendant which estimates related to which claim/lawsuit or whether each estimate was related to all of the lawsuits.   A review of the documents submitted by the parties supports this conclusion.

In the state court litigation, Defendant served on Plaintiffs Requests for Admissions, Interrogatories, and Requests for Production in all three cases.[4]   Plaintiffs served their responses to the Requests for Admission in each case on Defendant on May 8, 2020.   Docs. 24-4, 24-5, 24-6 (1125 Case).[5]   In the Requests for Admission, Plaintiffs were asked to admit that their "alleged

---

[3] *See, e.g.*, 1125 Case, Docs. 24-7, 24-8, 24-9 (copies of the estimates).    Together, the estimates total $433,643.39.

[4] The Requests for Production have not been provided by the parties and are not otherwise discussed herein.   The Interrogatories are undated, and the parties have not otherwise provided the date on which they were served.   *See, e.g.*, Docs. 24-14, 24-15, 24-16 (1125 Case).   The Requests for Admissions were served on Plaintiffs on April 3, 2020.   *See, e.g.*, Docs. 24-1, 24-2, 24-3 (1125 Case).

[5] In each of the above-styled cases, Plaintiffs' motions to remand and attachments, and Defendant's responses and attachments, are nearly identical.   Therefore, for the sake of brevity and ease of reference, in the remainder of this Report, the undersigned cites to the documentation submitted by Plaintiffs and Defendant in the 1125 Case.

damages related to the claimed loss, including attorney fees, but exclusive of interest and costs, exceed $75,000.00."   Docs. 24-1, 24-2, 24-3.   Plaintiffs responded that they were "unable to admit or deny at this time because the information known or readily obtainable is insufficient."   Docs. 24-4, 24-5, 24-6.

Starting on May 8, 2020, the parties exchanged email correspondence regarding the amount of Plaintiffs' claimed damages and the remaining outstanding discovery requests in all three cases. *See* Docs. 24-10, 24-11, 24-12, 24-13.   Counsel for Defendant notified counsel for Plaintiffs that as of May 8, 2020, Plaintiffs had failed to quantify the alleged damages in each case since the inception of the litigation.   Doc. 24-10, at 5–9.   Defendant demanded that "[a]t a bare minimum" Plaintiffs provide an estimate of their alleged damages.   *Id.* at 6.

That same day, Plaintiffs' counsel sent counsel for Defendant one estimate via email.   Docs. 24-10, at 4, 24-11, at 5.   The subject line of the email lists all three claim numbers.   *Id.*   Although the body of the email does not specify as much, the parties appear to agree that the estimate attached to the email was that prepared by Plaintiffs' public adjuster Ray Rosetti, dated December 4, 2018. Doc. 15, at 3; Doc. 24, at 2.   *See* Doc. 24-7 (copy of estimate).   Such estimate lists the date of loss as September 8, 2016.   *See* Doc. 24-7, at 1.   The estimate was for a total of $142,305.65 for wind damage.   *Id.* at 8.

In response to Plaintiffs' counsels' May 8, 2020 email attaching Mr. Rosetti's estimate, counsel for Defendant emailed counsel for Plaintiffs "I see one estimate.   There are three cases." Doc. 24-10, at 3–4.   In response on May 9, 2020, counsel for Plaintiffs wrote "That is all I could find.   I suspect that it [the estimate] covers more than one claim?   I will follow up with the PA next week and confirm."   *Id.* at 3.   Then, counsel for Defendant responded as follows:

> Your clients have filed 3 lawsuits and therefore have alleged three distinct damage claims.   You have produced a single estimate.   Does that estimate include damages

> related to all three cases?   Are the line items in the estimate divisible between the 3 lawsuits?
> . . . .
>
> Let me put it more simply.   I need a demand from the Talls for each of the three cases.   What are they seeking?   Hopefully, the discovery production will provide some basis for the demands.
>
> <u>Kindly provide a settlement demand for each of the cases today</u>. This is basic information that has been requested since 2016.   It should not be difficult to answer.

*Id.* at 2.   Counsel for Plaintiffs responded: "[t]hat is all that I could find.   I will be in touch later next week with a demand."   *Id.* at 1.

On May 13, 2020, Plaintiffs' counsel emailed two additional estimates to defense counsel. Doc. 24-11, at 3-4.   While the May 13, 2020 emails again do not identify the author of the estimates, the parties appear to agree that one of the estimates was from Brian Waller of Waller Construction, Inc. dated September 30, 2018.   Doc. 24-8.   The estimate from Mr. Waller does not include a date of loss and is for a total of $25,724.49 for "Tall-Basement."   *Id.* at 4.   The other estimate is from Ray Rosetti, the public adjuster, dated July 18, 2019.   Doc. 24-9.   Mr. Rosetti's estimate states that it is for water damage, the date of loss is listed as May 12, 2018, and the total is $265,613.25.   *Id.* at 1, 26.

In response to the May 13, 2020 estimates, counsel for Defendant responded to Plaintiffs' counsel:

> What case/claim is this related to?
>
> What case/claim was the last estimates [sic] related to?
>
> Do you have a demand on the three separate cases?   What are your clients seeking? This should not be a difficult question for 4 year old claims.

Doc. 24-11, at 2.

It does not appear that counsel for Plaintiffs responded to these inquiries.   *See id.* at 1–2.

Counsel for Defendant sent another email on May 15, 2020 asking whether counsel for Plaintiffs

had "answers to any of the questions previously posed?"   *Id.* at 1.   Counsel for Plaintiffs merely

responded that "We are still working on responses to your discovery demands.   I will try to get you

something next week."   *Id.*

On June 1, 2020, defense counsel followed up with counsel for Plaintiffs regarding the

outstanding discovery responses.   Defense counsel stated that "Plaintiffs have provided limited

information, but have failed to associate any estimate with a case/claim making it impossible for the

insurer to determine the basis for any of the lawsuits."   Doc. 24-12, at 1.   Counsel for Plaintiffs

responded that he anticipated providing discovery responses by June 5, 2020.   *Id.*   Later the same

day, defense counsel sent another email to Plaintiffs' counsel stating that Plaintiffs had failed to

provide promised settlement demands and asking counsel for Plaintiffs "what [his] clients are

seeking for each of the separate cases/claims."   Doc. 24-10, at 1.   It does not appear that counsel

for Plaintiffs responded to this email.

On June 8, 2020, defense counsel followed up with Plaintiffs' counsel regarding the overdue

discovery responses:

> I believe that we have been more than patient in awaiting a response to the basic
> question of what damages your clients are claiming as to each of the three
> cases/claims.   Informal requests went unanswered. Formal discovery has
> gone unanswered.   Extensions have been given and yet we are no closer to getting
> answers than my client was pre-suit.

Doc. 24-13, at 1.

Plaintiffs finally served their outstanding answers to Defendant's Interrogatories on June 8,

2020.   Docs. 24-17, 24-18, 24-19.

Based on a review of this timeline, the record does not conclusively establish, as Plaintiffs suggest, that their May 8 and 13, 2020 estimates provided a basis for removal because it was not established on those dates which estimates applied to which claims.[6]   This is particularly true given defense counsel's multiple requests to counsel for Plaintiffs to clarify what damages Plaintiffs are claiming in each of the three separate cases, and further solidified by the fact that counsel for Plaintiffs even stated that he suspected that the first estimate related to more than one claim.   Doc. 24-10, at 3.   Tellingly, in the motions to remand, Plaintiffs still do not state that each individual estimate relates to a separate case or otherwise identify which estimate relates to which lawsuit. Overall, I find counsel for Plaintiffs' responses to defense counsel's inquiries were ambiguous at best, and intentionally evasive at worst.   Thus, I find Plaintiffs' reliance on such estimates to argue that removal was untimely unpersuasive.

That leaves Plaintiffs' answers to Defendant's Interrogatories, which Plaintiffs served on Defendant on June 8, 2020.  If the Interrogatories provided sufficient evidence that Plaintiffs' claims in each of the three cases exceed the jurisdictional threshold, and removal was properly affected thereon, then there should be no dispute that removal would have been timely (Defendant removed each of the cases to this Court on June 24, 2020—16 days after service of the answers to the Interrogatories).   Plaintiffs, however, dispute that the Interrogatories provided a sufficient basis for removal, which issue is addressed next, below.

---

[6] Neither party discusses the fact that two of the estimates include dates of loss that correspond to the dates of loss in the 1125 Case and 1128 Case.  *See* Docs. 24-7, 24-9.  Regardless, however, given counsel for Plaintiffs vague and ambiguous responses to defense counsel's inquiries regarding the estimates, counsel for Plaintiffs' inability to identify the damages related to each case, and counsel for Plaintiffs' suggestion that the first estimate likely related to more than one claim, I do not find the listed dates of loss fatal to the timeliness of removal.

B.     Amount in Controversy.

As an initial matter, Plaintiffs' contention that Defendant has failed to establish an amount in controversy exceeding $75,000.00 is wholly contradictory to their assertion that removal was untimely based on the May 8 and May 13, 2020 estimates.   Thus, the contention is not well taken.

In addition, Plaintiffs' assertion that they "are not claiming that the total cost of repairs itemized in all three estimates are their damages in this case," and that the estimates "should not be aggregated to establish diversity jurisdiction because each case involves distinct claims . . . under separate insurance policies," Doc. 15, at 8, is unavailing.   As discussed above, Plaintiffs never explain which estimate applies to which case, nor does it appear that Plaintiffs have otherwise given such information to Defendant.   Plaintiffs served all three estimates on Defendant in response to discovery requests in all three lawsuits, never identifying or otherwise specifying which estimate related to each of Plaintiffs' individual claims.   *See* Doc. 24-11, at 3, 5.

Moreover, in each of the three cases, Defendant served almost identical Interrogatories on Plaintiffs.   I find that two of Plaintiffs' answers to Defendant's Interrogatories in particular negate Plaintiffs' arguments that Defendant is impermissibly aggregating the three estimates to establish the amount in controversy for jurisdictional purposes.

First, in each of the three cases, Defendant served the following Interrogatories:

Identify each construction, repair, rehabilitation, renovation, remodeling, or other improvement conducted at the insured property by plaintiffs since [the date of the claimed loss] through the present, and provide for each such activity:

(a)  the nature of the construction, repair, rehabilitation, renovation, remodeling, or other improvement;

(b)  the identity of each estimate, proposal, appraisal, scope of repair, summary, and assessment;

(c)  the approximate start and completion dates of the work;

(d)  the name of the person or entity who completed or was to complete each activity;

(e)  the cost or intended cost of each activity;

(f)  each payment made for each activity and the source of such payment;

(g)  the identity of each permit obtained for each activity;

(h)  the identity of each contract entered into for each activity; and

(i)  whether plaintiffs claim that this work was necessary due to the claimed loss.

Doc. 24-17, at 18–20; Doc. 24-18, at 25–27; Doc. 24-19, at 25–27.

Plaintiffs provided identical answers in each of the three cases, which stated in pertinent part:

Defendant is referred to the inspection reports, <u>estimates</u> and photographs it obtained, as well as the documents and information exchanged in this litigation and during Defendant's investigation of the subject claim for information concerning construction, repair, rehabilitation, renovation, remodeling, or other improvement at the insured property since the date of the claimed loss.

*Id.* (emphasis added).

Second, in each of the three cases, Defendant served the following Interrogatories:

Identify each construction, repair, rehabilitation, renovation, remodeling, or other improvement that has <u>not</u> been performed or completed, but which plaintiffs believe[] is necessary to repair the alleged damage to the insured property from the claimed loss, and with respect to each state:

(a)  the nature of the construction, repair, rehabilitation, renovation, remodeling, or other improvement;

(b)  the identity of each estimate, proposal, appraisal, scope of repair, summary, and assessment;

(c)  the expected start and completion dates of the work;

(d)  the name of the person or entity who is or was to complete each activity;

(e)  the cost or intended cost of each activity;

(f)   each payment made for each activity and the source of such payment;

(g)   the identity of each permit obtained for each activity; and

(h)   the identity of each contract entered into for each activity.

Doc. 24-17, at 21–22; Doc. 24-18, at 28–29; Doc. 24-19, at 28–29.

In each of the three cases, Plaintiffs served identical answers, which provide, in relevant part:

> Plaintiffs believe that the nature of the construction, repair, rehabilitation, renovation, remodeling, or other improvement requires a complete restoration of the insured property to its pre-loss condition (or better) as required by the terms and conditions of the insurance policy sold by the Defendant.  Plaintiff's public insurance adjuster(s) Ray Rossetti . . . submitted an estimate of the cost of repairs; however, this (and any other estimate that may have been submitted by or on behalf of the Plaintiffs) is exclusive of hidden damages, concealed water intrusion, mold remediation (if necessary), fees, costs, interest, statutory, extra-contractual and bad faith damages.   Plaintiffs have not engaged a contractor, entered into a contract nor obtained permits for all of the work described in the estimate, and therefore have no "start" or "completion dates of the work."   Defendant is referred to the inspection reports, estimates and photographs it obtained, as well as the documents and information exchanged in this litigation and during Defendant's investigation of the subject claim for information concerning construction, repair, rehabilitation, renovation, remodeling, or other improvement at the insured property that has "not" been performed.

*See id.* (emphasis added).

Given that Plaintiffs have failed to inform Defendant what damages Plaintiffs are claiming in each lawsuit, and that Plaintiffs' answers to Interrogatories point Defendant—in each of the three separate lawsuits—to all of the estimates submitted during discovery without any further specificity, Defendant could reasonably rely on such estimates in all three cases to establish the amount in controversy.   Moreover, in each of the three cases, Plaintiffs explicitly state that the estimates prepared by the public adjuster, Ray Rosetti, are applicable in all three cases, and such estimates for

costs of repair are <u>exclusive</u> of other damages. Therefore, I find Plaintiffs' contention that Defendant is attempting to aggregate the damages claimed in each lawsuit unavailing.[7]

In each of the motions to remand, Plaintiffs also argue that Defendant's notice of removal fails to establish that the amount in controversy exceeds the jurisdictional threshold because Defendant fails to account for $223,951.00 in pre-suit payments and $15,000.00 in deductibles. *See* Doc. 15, at 9–10. Plaintiffs are correct that pre-suit payments and deductibles do not ordinarily constitute amounts "in controversy" for purposes of removal. *See, e.g.*, *Koester v. State Farm Ins. Co.*, No. 7:12-cv-02528-JEO, 2012 WL 5265783, at *5 (N.D. Ala. Oct. 22, 2012) ("[W]hen an insurer makes pre-suit payments towards an insured's claim, such amounts are not 'in controversy' and thus not included when determining whether the jurisdictional threshold has been met."); *Bittorf v. Lexington Ins. Co.*, No. 6:18-cv-632-Orl-37TBS, 2018 WL 2976734, at *3 (M.D. Fla. May 24, 2018) (reducing amount allegedly in controversy by amount of deductible in finding remand proper), *report and recommendation adopted*, 2018 WL 2970923 (M.D. Fla. June 13, 2018).

However, the application of those principles does not support Plaintiffs' position here. Even if the Court accepts Plaintiffs' contentions regarding the pre-suit payments and deductibles

---

[7] As Defendant argues, each of the cases cited by Plaintiffs to support their argument is factually inapposite. For example, *Emergency Flood Restoration Servs., Inc. v. Liberty Mut. Fire Ins. Co.*, No. 6:15-cv-659-Orl-22KRS, 2015 WL 13333181, at *2 (M.D. Fla. Nov. 23, 2015), concerned a matter where the defendant attempted to remove a case that clearly did not meet the amount in controversy threshold (damages were only $15,629.66), and sought to consolidate that case with another federal case in order to meet the $75,000.00 requirement. In *U.S. for Use of Owens–Corning Fiberglass Corp. v. Brandt Constr. Co.*, 826 F.2d 643, 647 (7th Cir. 1987), the court held that an improperly removed case – based on the lack of complete diversity of parties – is not "pending before the district court" for purposes of Rule 42(a) consolidation. *McKenzie v. United States*, 678 F.2d 571, 574 (5th Cir. 1982), similarly did not concern improper removal based on the amount in controversy and instead addressed the lack of diversity between the parties and the non-existence of a federal question, noting that consolidation with another matter could not cure such deficiencies. *Takamatsu v. William Ryan Homes of Fla., Inc*., No. 8:08-cv-1261-T-30TGW, 2008 WL 3255602, at *2 (M.D. Fla. Aug. 7, 2008), concerned remand of a case where a defendant attempted to remove a state court complaint under the court's supplemental jurisdiction, and sought to have the court exercise jurisdiction by consolidating the matter with another pending federal complaint. Finally, in *Williams v. Ameriquest Mortg., Co*., No. 07-0325-WS-M, 2007 WL 2254416, at *2 (S.D. Ala. Aug. 2, 2007), the court was addressing a motion to consolidate two cases under Fed. R. Civ. P. 42(a).

- 15 -

(which, I note, appear to aggregate the pre-suit payments and deductibles from <u>all three cases</u>), as discussed above, I find that Defendant could properly rely on the estimates produced by Plaintiffs to establish the amount in controversy because Plaintiffs produced each of the estimates in all three lawsuits and because Plaintiffs failed to otherwise specify the damages related to their individual claims.   Taking the total of such estimates—$433,643.39—and subtracting Plaintiffs' total claimed pre-suit payments and deductibles—$238,951.00—Defendant has still demonstrated that the amount in controversy—$194,692.39—exceeds the jurisdictional threshold of $75,000.00.[8]   *See* 28 U.S.C. § 1332.   And, as discussed above, because Plaintiffs have failed to provide any insight (and in several instances Plaintiffs' counsel simply chose not to respond to direct inquiries) with respect to how these estimates can be apportioned amongst the three claims, I further find that it is reasonable for the Defendant to utilize even this reduced amount of $194,692.39 to establish the amount in controversy for diversity jurisdiction in this Court for each case.

Finally, I note that Plaintiffs' conduct in this case is telling.   In their responses to Defendant's Requests for Admissions, Plaintiffs refused to admit or deny that the amount in controversy exceeds $75,000.00.   Docs. 24-4, 24-5, 24-6.   And, after Plaintiffs filed the motion to remand, counsel for Defendant sent counsel for Plaintiffs an email stating that Defendant would agree to remand if Plaintiffs would "agree to a written stipulation which provides that, regardless of the amount of any judgment that may be entered in this case, the Plaintiffs shall receive no more

---

[8] I note that in the "relevant facts and procedural history" in each of Plaintiffs' motions to remand, they point to emails and "Statement of Loss Summary" sheets from Defendant's claims adjuster, suggesting that the claims in the individual cases did not satisfy the amount in removal. Doc. 15, at 2–3.   These assertions and supporting documentation are also found in an affidavit from counsel for Plaintiffs and attachments to the motions to remand.   *See* Docs. 15-1, 15-2, 15-3, 15-4.   Neither the motions to remand, the affidavit, nor the supporting documents, however, state the total amount in controversy as it relates to the individual lawsuits or the amount that Plaintiffs claim in damages as it relates to each individual lawsuit.   *See* Docs. 15, 15-1, 15-2, 15-3, 15-4.   Therefore, I find that Plaintiffs' recitation of prior payments and estimates by Defendant's claims adjuster does not otherwise change the analysis regarding pre-suit payments and deductibles.

than $75,000.00 <u>inclusive</u> of attorney's fees."   *See* Doc. 24-20.   According to Defendant, Plaintiffs did not respond to this inquiry.   Doc. 24, at 14.   Although maybe not sufficient by themselves, Plaintiffs' equivocal discovery responses and refusal to stipulate that the damages do not exceed $75,000.00 can "constitute[e] evidence that the amount in controversy [has been] satisfied."   *See Hallenbeck v. Target Corp.*, No. 3:18-cv-891-J-32JBT, 2018 WL 4279245, at *2 (M.D. Fla. Sept. 7, 2018); *see also Devore v. Howmedica Osteonics Corp.*, 658 F. Supp. 2d 1372, 1380–81 (M.D. Fla. 2009) (finding that a plaintiff's refusal to stipulate or admit that she is not seeking damages in excess of the jurisdictional threshold should be considered in determining amount in controversy)

Based on the foregoing, I respectfully recommend that the Court find that Defendant timely removed all three of the above-styled cases to this Court based on Defendant's reliance on Plaintiffs' answers to the Interrogatories, and that Defendant has sufficiently satisfied its burden of demonstrating that the amount in controversy exceeds the jurisdictional threshold in each of these cases.

C.      <u>Waiver</u>.

In the motions to remand, Plaintiffs argue that "[t]he fact that the August Claim was on a November 2020 trial docket calls into serious question [Defendant's] motives for filing its belated Notice of Removal."   Doc. 15, at 10.   Plaintiffs also contend that by filing motions to compel discovery in all three cases, "[c]learly [Defendant] intended to defend all three claims in the state court, before and after it received the estimates attached to its notice, and therefore waived its right to removal."   *Id.* at 11.

Plaintiffs' argument is, once again, unpersuasive.   "In order to waive the right of removal, a defendant must proceed in state court despite having notice of its right to remove the case." *Bechtelheimer v. Cont'l Airlines, Inc.*, 755 F. Supp. 2d 1211, 1214 (M.D. Fla. 2010) (citation

omitted).   "[P]re-removal discovery is permitted to ascertain, among other things, amount in controversy information."   *Id.*   Because it is clear from the records in these three cases that Defendant answered the state court complaint and served discovery prior to having the right to removal, it is axiomatic that Defendant did not waive the right to removal.   *See id.*; *see also Cruz v. Lowe's Home Centers, Inc.*, No. 8:09-cv-1030-T-30MAP, 2009 WL 2180489, at *3 (M.D. Fla. July 21, 2009) ("Defendant did not waive its right to remove the State Court Action when it participated in discovery and the case management conference, because the right to remove was not yet available to Defendant.").

Accordingly, I respectfully recommend that the Court reject Plaintiffs' contention that Defendant waived the right to remove the above-styled cases to this Court.

D.     Attorney's Fees for Improper Removal.

Based on Plaintiffs' arguments that removal was improper, they seek, pursuant to 28 U.S.C. § 1447(c), an award of costs and expenses, including attorney's fees, incurred as a result of the allegedly improper removals.   However, because I recommend the Court find that removal was proper in all three cases, Plaintiffs' requests for attorney's fees under § 1447(c) should be denied.

## IV.     RECOMMENDATION.

For the reasons discussed herein, I respectfully **RECOMMEND** that the Court:

1.     **DENY** Plaintiffs' Motion to Remand in the 1125 Case (Doc. 15);

2.     **DENY** Plaintiffs' Motion to Remand in the 1127 Case (Doc. 11); and

3.     **DENY** Plaintiffs' Motion to Remand in the 1128 Case (Doc. 6).

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

      Recommended in Orlando, Florida on August 27, 2020.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record